**UNITED STATES of America,**

v.

**James Parker CARTER, Appellant.**

**No. 79–1521.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Jan. 10, 1980.

Decided April 25, 1980.

Robert J. Cindrich, U. S. Atty., Paul J. Brysh, Edward J. Schwabenland, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for appellant.

Before GIBBONS, ROSENN and GARTH, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge.

In this appeal we are once again faced with a guilty plea which was not processed in accordance with the requirements of Fed. R.Crim.P. 11. We hold that the deviations from Rule 11 in this case constitute reversible error. Consequently, we vacate Carter's sentence and remand to the district court for further proceedings. Moreover, because we are distressed by the numerous direct appeals generated by violations of the requirements of Rule 11, we caution the district courts to adopt procedures and to take the requisite care to comply fully with that

Rule so as to assure finality and the integrity of proceedings when guilty pleas are accepted.

## I.

On February 12, 1979, James Parker Carter plead guilty to Count I of an indictment charging him with six counts of violating 18 U.S.C. § 1708.[1] The basis for the indictment was that Carter had allegedly stolen a welfare check from a mail box which he shared with his uncle, and cashed it. At the time of the plea proceeding, Carter had been unemployed for seven years. He also was suffering from various health disorders. Carter was represented by appointed counsel in the plea proceeding. The district court accepted Carter's guilty plea and later sentenced him to four years imprisonment.

The government concedes that the district court failed to conform to the requirements of Fed.R.Crim.P. 11 in the conduct of Carter's plea proceeding.[2] Our review of the record reveals that the district court departed from the Rule's requirements in five particulars: (1) the district court specifically failed to inform Carter "that he ha[d] a right to plead not guilty or to persist in . . . [his not guilty] plea (Rule 11(c)(1)); (2) the court failed to inform Carter specifically that he would have the right to the assistance of counsel at trial (Rule 11(c)(3)); (3) the court did not tell Carter that at trial he would have the right to "confront and cross-examine witnesses against him" (Rule 11(c)(3)); (4) Carter was not informed that any statements he made

in the plea proceeding could later be used against him in a prosecution for perjury (Rule 11(c)(5)); and (5) the trial court failed to require disclosure of the plea agreement in open court (Rule 11(e)(2)).

Carter asserts each of these deficiencies in his appeal from the judgment of sentence entered against him. The government responds that the errors in the plea proceedings were harmless at most and did not prejudice Carter's rights. The government argues that despite the district court's failure to adhere to Rule 11, the record in this case makes clear that Carter's plea was made freely, with an understanding of the charges raised against him and with knowledge of the direct consequences of his guilty plea.

## II.

We are not persuaded that the departures from Rule 11 requirements in this case were harmless. As an initial matter, we note that the question of whether a harmless error standard is applicable in direct appeals such as this has not yet been settled in this circuit.[3] Recently, in *United States v. Altro*, 612 F.2d 575 (3d Cir. 1979), this court sitting *en banc* was evenly divided on this precise issue. *Altro* involved a plea proceeding which was deficient in three respects, all of which are found here.[4] We emphasize, at this point, that it is not necessary for us to resolve the dispute which divided the court in *Altro* in order to decide the case before us. Our disposition of Car-

---

1. This section provides, *inter alia*, as follows:

   \* \* \* \* \* \*

   Whoever . . . unlawfully has in his possession . . . mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

   Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. The full text of Rule 11, at the time Carter's plea was taken in 1979, is printed as Appendix A to this opinion.

3. It is now established that a harmless error standard applies on *collateral* attack to guilty plea proceedings. *United States v. Timmreck*,

441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

4. The trial court failed to inform the defendant in *Altro* that (1) he had the "right to plead not guilty or to persist in that plea if it [had] already been made" (Rule 11(c)(3)); (2) that he had "the right to confront and cross-examine witnesses against him" (Rule 11(c)(3)); and (3) that "if he pleads guilty . . . , the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement" (Rule 11(c)(5)).

ter's appeal would be the same under either standard.

Two of the deficiencies in Carter's plea proceeding involve core values of our adversary system. Carter was not told that he had a right to assistance of counsel at trial. Nor was he told of his right to confront and cross-examine witnesses who testify against him. On this record, neither of these defects can be considered harmless.

This court has laid great stress on the right to counsel and on the lawyer's importance to the adversary system. *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3d Cir. 1979); *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (3d Cir. 1973). As was stated recently in *United States v. DeFalco*, Nos. 78–2126 and 78–2209 (3d Cir. Dec. 28, 1979) (*en banc*): "[t]he essence of the system is that there be professional antagonists in the legal forum, dynamic disputants prepared to do combat for the purpose of aiding the court in its quest to do justice." *Id.* Slip Op. at .10 (plurality opinion). In this case, Carter was represented by a public defender at the proceeding in which his guilty plea was taken. He was not told that he would have the right to the continued assistance of counsel, assigned or retained, should he decide to change his plea and go to trial.[5] On this record, we have no way of knowing whether Carter knew of his right to counsel at trial. Thus, we cannot determine whether Carter was aware that he was entitled to

the full benefit of the adversary system. This record gives us no basis by which we can determine the extent of Carter's knowledge of his right to trial counsel.[6] Accordingly, because Carter was not informed of his right to counsel, we cannot conclude that he had full knowledge of the direct consequences of his plea. *See United States v. Dayton*, 604 F.2d 931, 939 (5th Cir. 1979) (*en banc*). Such error cannot be characterized as harmless, but is rather "inherently prejudicial." *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *United States v. Dayton, supra.*

The district court also failed to inform Carter of his right to confront and cross-examine the witnesses who would testify against him. This right is also of fundamental proportions. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We cannot assume, from this record, that Carter was aware of this right or of its full impact.[7] Moreover, we have no means of determining whether or not Carter would have, at the time, maintained a guilty plea had he been aware of his confrontation rights. Thus, we cannot conclude that this defect in the Rule 11 proceeding was harmless.

Therefore, because we conclude that, on this record, the district court's errors in failing to inform Carter specifically of his right to counsel and his right of confrontation[8] were not harmless errors,[9] we are obliged to vacate Carter's sentence.[10]

---

5. Carter was not even told that he had the option of persisting in his not guilty plea.

6. The transcript of the plea proceeding indicates that Carter had a prior criminal record. But there is no evidence of whether his prior conviction was the result of a jury trial or of another guilty plea.

   For a different view of the importance of complying with this portion of the Rule, on a different record, see *United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977).

7. The district court did inform Carter of his right to trial. But we will not assume that Carter was aware that the right of cross-examination is implicit in the right to trial. As to Carter's previous experience with criminal trials, see note 5 *supra*.

8. Because of our findings with respect to these two defects, we need not address the conse-

quences of the other deficiencies in the plea proceeding.

9. We find that these errors were not harmless under Fed.R.Crim.P. 52(a), which provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *A fortiori* they would not be harmless under the higher standard used for constitutional infringements—i. e., that the error must be harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Consequently, it is unnecessary for us to decide which standard is applicable in this case. *But see United States v. Dayton*, 604 F.2d at 946–47 (Brown, C. J. concurring) (urging adoption of *Chapman* standard for Rule 11 violations).

10. See note 10 on page 296.

### III.

We have previously observed that direct appeals from improperly conducted Rule 11 proceedings have been filed to our court with disconcerting frequency. The entire system of criminal justice suffers if guilty plea proceedings are not processed fairly and effectively. But the primary responsibility for the proper conduct of guilty plea proceedings lies with the district courts. As an appellate court, we are not well situated to insure the integrity and finality of the guilty plea system. Thus, we urge the district courts in this circuit to maintain strict observance to the requirements specified in Rule 11 in order to assure the integrity and finality of the plea process. We do not consider this an undue burden in light of the existing mandate of Rule 11 and the essential nature of an efficient plea system as it affects both the criminal justice system and individual criminal defendants.

### A.

Both the criminal justice system and individual criminal defendants have great stakes in the smooth and effective operation of guilty plea procedures. Recognizing that 82.9 percent of all criminal convictions in federal court are the result of pleas of guilty or *nolo contendere*,[11] it is apparent that administratively our criminal justice system has come to depend heavily upon guilty pleas. *See, e. g., President's Commission on Law Enforcement and Administration of Justice, Task Force Report, The Courts* 9 (1967); Note, *Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas*, 112 *U.Pa.L.Rev.* 865 (1964); *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971); *United States v. Dayton*, 604 F.2d at 934. Moreover, the practice of accepting guilty pleas, rather than requiring lengthy, full-scale trials, insures prompt application of punitive and correctional measures and furthers society's interests in the general deterrence of crime and in the rehabilitation of criminal defendants. *See* Advisory Comm.Note, Fed.R.Crim.P. 11.[12] Nor can it be doubted that plea agreements with certain defendants are often utilized as a mechanism to facilitate the successful prosecution of other more serious offenders. Note, *Guilty Plea Bargaining, supra* at 881; Advisory Comm.Note, *supra.* Overall, therefore, it is evident that insofar as societal concerns are involved, the success of our criminal justice system depends, in large part on an efficient, swift, supervised and thorough plea agreement process which is not subject to disruption or excessive delays.

From the standpoint of the criminal defendant, the system for accepting guilty pleas is equally, and perhaps even more, important. The criminal defendant's overriding concern, which has constitutional overtones, *see Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is that he not plead guilty to a crime unless, and until, he has had explained to him and

---

**10.** We conclude that the result which we reach would be the same under the standard enunciated by the majority in *Dayton*. In *Dayton* the Fifth Circuit distinguished between the pre- and post-*McCarthy* aspects of Rule 11 and held that only the former required automatic reversal. As we noted in text, the errors in the plea proceeding affected Carter's "knowledge of the direct consequences of the plea." Consequently, under *Dayton* and under *McCarthy*, automatic reversal would be required. The *Dayton* court, moreover, seemed to require almost literal compliance with the first five requirements of Rule 11, which include the two requirements which were violated here:

> By the same token, however, we conclude that the judge must inform him of these and

that an entire failure by the judge to do so will ordinarily require reversal. The rule plainly says he "must" do this, selecting these five critical consequences as the minimum essentials; and if the task it sets be slightly onerous, it is not difficult.

604 F.2d at 937.

**11.** Annual Report of the Director, Administrative Office of the U.S. Courts, A-69 (1979). This statistic covers the period from July 1, 1978 to June 30, 1979.

**12.** In a slightly different context, these same considerations led to the passage of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976).

understands all of his constitutional rights and protections. This is a concern which society acknowledges and safeguards. Because our system of criminal justice is predicated upon fundamental fairness, society has consistently recognized that it is vital that the interests of each criminal defendant be protected to the fullest in plea proceedings. *See id.*

Thus, although starting from what superficially would appear to be two different premises for requiring an efficient plea process, it is clear that both society and the individual defendant have arrived at an identical interest in the means by which their respective purposes are to be achieved—an effective, thorough, complete and meaningful plea proceeding. Imprecision in the manner in which these proceedings are conducted deserves the interests of both society and the criminal defendant. On the one hand, a failure to properly apprise the criminal defendant of his rights leads to an unknowing, unintelligent and involuntary waiver. On the other hand, to the extent that improperly administered pleas generate and encourage appeals which are time consuming, burdensome and difficult to process, the societal interests in rehabilitation, speedy justice, swift punishment and deterrence are thwarted.

The harms caused by inexactitude and a lack of meaningful observance in implementing the rules are no longer acceptable. As we discuss below, these are rules which the Supreme Court has promulgated and which Congress has endorsed in their joint effort to regulate and control the processing of guilty pleas.

## B.

With full recognition of the importance of guilty pleas, beginning in 1944, Congress, at the recommendation of the Supreme Court, enacted Rule 11 of the Federal Rules of Criminal Procedure, in order to govern the acceptance of guilty pleas.[13] Rule 11 was expanded in 1966.[14] Significantly, the 1966 amendment required the trial court to address the defendant directly and explain to the defendant the direct consequences of his plea. Moreover, it required the court to satisfy itself, on the record, that there was a factual basis for the plea and that the defendant was voluntarily pleading guilty. In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1960), the Supreme Court, exercising its supervisory power over the federal courts, held that "prejudice inheres" in failure to comply with Rule 11. The Supreme Court explained its ruling in *McCarthy* in terms of both fairness to criminal defendants, and the efficiency of the criminal justice system:

> Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

---

**13.** The 1944 version of Rule 11, in its entirety, stated:

> The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.

This rule did little more than state constitutional minima required by *Boykin v. Alabama, supra.*

**14.** The 1966 version of Rule 11 stated, in pertinent part:

> The court may refuse to accept a plea of guilty, and shall not accept such [a] plea . . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

394 U.S. at 472, 89 S.Ct. at 1174. In 1975, Rule 11 was amended again. The 1975 amendments entailed a detailed explication of the core requirements of the 1966 Rule. The 1975 version, which is currently in use, therefore, represents a significant expansion of the Rule; it is now more than 1,000 words in length. Thus, the question becomes whether *McCarthy* demands strict compliance with the significantly expanded, current Rule 11.

Both the language of the new Rule 11 and the legislative history suggest that it was intended to be mandatory. For example, subsection (c), which contains the advice which defendants must be given in order to insure that their pleas are voluntary, states affirmatively that "the court *must address the defendant personally* in open court and inform him of, and determine that he understands" the rights which he is foregoing. (emphasis added). The Advisory Committee Notes to the Rule echo this mandatory tone,[15] as does the Conference Committee Report.[16] Moreover, Congress' intent is further evidenced by the manner in which the Rule was passed. As originally reported by the Chief Justice, the Rule did not contain the litany of rights which currently appear in subsection (c). These were added by the House. The Senate would have apparently preferred the original language but the House insisted upon its position and prevailed in conference. Conf.Rep.No. 94–414, 94th Cong., 1st Sess. (1975).

But the language of Rule 11 and the legislative history of the Rule, both of which clearly direct trial courts to track Rule 11 without deviation, do not necessarily mean that departures from the Rule require automatic reversal. The Supreme Court has not yet spoken definitively as to whether the "inherent prejudice" standard of *McCarthy* extends to the amended Rule 11.[17] But the recent unanimous opinion in *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), where the Supreme Court denied habeas corpus relief for technical violations of Rule 11, may provide some guidance on this issue. The Court seemed to infer that technical violations could be remedied on direct appeal:

> His only claim is of a technical violation of the rule. *That claim could have been raised on direct appeal,* see *McCarthy v. United States*, 394 U.S. 459 [89 S.Ct. 1166, 22 L.Ed.2d 418], but was not. And there is no basis here for allowing collateral attack "to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 [67 S.Ct. 1588, 1590, 91 L.Ed. 1982.]

441 U.S. at 784, 99 S.Ct. at 2087 (emphasis added). Indeed the rationale for denying relief for technical violations of Rule 11 on collateral review would seem to be the same as the rationale for establishing a prophylactic rule respecting such violations on direct appeal. In both instances, the primary emphasis is on achieving finality and integrity of judicial processes, while discouraging frivolous and unnecessary appeals.

### C.

■ Nevertheless, we do not consider the passing reference to *McCarthy* which appeared in *Timmreck* to control our decision

---

15. For example, the Advisory Committee Notes state that subsection (c), "prescribes the *advice which the court must give to the defendant as a prerequisite to the acceptance of a plea* . . . . The amendment identifies more specifically what must be explained to the defendant." (emphasis added).

16. The Congressional Conference Committee ·emphasized that this subsection, "enumerates certain things that a *judge must tell a defendant* before the judge can accept that defendant's plea." Conf.Rep.No. 94–414, 94th Cong., 1st Sess. 9 (1975), U.S.Code Cong. & Admin. News 1975, pp. 674, 714. (emphasis added).

17. The Courts of Appeals have been divided on this issue. *Compare United States v. Dayton, supra* ("fallings off from post-*McCarthy* additions to the rule" do not merit automatic reversal); *United States v. Scharf*, 551 F.2d 1124 (8th Cir. 1977) (substantial compliance with Rule 11 is enough) *with United States v. Journet*, 544 F.2d 633 (2d Cir. 1976) (harmless error standard rejected). The Second Circuit's insistence on strict compliance with Rule 11 is somewhat questionable, however. *See United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977); *United States v. Michaelson*, 552 F.2d 472 (2d Cir. 1977).

here. As we observed in Part II, *supra*, the district court's omissions in Carter's plea proceeding required reversal under either a harmless error standard or under a prophylactic rule. Yet, we continue to be impressed by the logic of *McCarthy*, with its dual concerns for the rights of the criminal defendant and the integrity of guilty plea proceedings. Although we do not hold that it controls our decision, we find *McCarthy*'s logic equally applicable to the 1975 version of Rule 11 as it was to the 1966 version; for the newer version, in large part, merely explicates and expands upon the 1966 Rule. Thus, although the new version of the Rule is longer, it is still

> not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to *inform* them of their rights and to determine whether they understand the action they are taking.

394 U.S. at 472, 89 S.Ct. at 1174. Therefore, we urge the district courts in this circuit to pay particular attention to and to adhere carefully to all the requirements of Rule 11. We do not now specify or impose a rule which would result in the setting aside of a defendant's guilty plea in each instance where a district court in this circuit fails to adhere strictly to each term and requirement of Rule 11. However, continued deviations from the provisions of Rule 11, which are raised before us on direct appeal, might very well require this court to take such action in the future.

We do not consider careful compliance with Rule 11 to constitute any additional imposition on the district courts. Rule 11 is, and has for some time been, clearly mandatory in its terms. Moreover, in its present form, Rule 11 is virtually a checklist for conducting guilty plea procedures. We also note that the *Bench Book for United States District Court Judges*, which was recently distributed to all district court judges by the Federal Judicial Center, contains a comprehensive section on guilty plea proceedings which tracks Rule 11. (§ 1.06). There would appear to be little reason for a district court judge to deviate from the terms of Rule 11 or to omit mention of any of the advice required by that Rule if the judge tracked either the Rule itself or the *Bench Book*. Finally, we commend to the district courts a plea form procedure similar to that followed in several state courts in order to guarantee the completeness of guilty plea proceedings.[18] While at this time we do not require the adoption of written guilty plea forms, we believe that the use of such forms could only help in alleviating the problems which we have discussed. Obviously, any form devised and used by the district courts should comply with all of the provisions and requirements of Rule 11. We believe that such plea forms would assist in guaranteeing that defendants' rights are adequately protected in the first instance, thereby reducing the necessity for appeal.

By urging more attentive compliance to the requirements of Rule 11, we do not intend to elevate form over substance in guilty plea proceedings or to emphasize mere ritual over meaningful judicial inquiry. As we have previously observed, the hallmark of our criminal justice system is fundamental fairness. Fundamental fairness dictates that guilty plea proceedings be undertaken sensitively. That sensitivity, however, is not exclusive of, nor inconsistent with, thorough and careful compliance with the requirements of Rule 11 in the conduct of guilty plea proceedings. We believe that such compliance by the district courts will guarantee an efficient and complete guilty plea process which recognizes and gives effect to all interests involved.

## IV.

We will therefore vacate the judgment of sentence imposed upon Carter because we

---

**18.** New Jersey Criminal Practice Rule 3:9–2, for example, directs courts, prior to accepting guilty pleas, to require defendants to complete forms acknowledging that procedures for accepting guilty pleas have been complied with. While execution of the form does not conclusively establish that the guilty plea was made voluntarily and intelligently, *see State v. Herman*, 47 N.J. 73, 219 A.2d 413 (1966), it does weigh heavily against such claims, thereby reducing the incidence of appeals from guilty pleas.

find that the errors in his Rule 11 proceeding were not harmless, and we will remand to the district court for further proceedings.

## APPENDIX A

RULE 11. Pleas

(a) *Alternatives.* A defendant may plead not guilty, guilty, or nolo contendere. If a defendant refuses to plead or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

(b) *Nolo Contendere.* A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.

(e) *Plea Agreement Procedure.*

(1) *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

(2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the

acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

(3) *Acceptance of a Plea Agreement.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) *Rejection of a Plea Agreement.* If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) *Time of Plea Agreement Procedure.* Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

(6) *Inadmissibility of Pleas, Offers of Pleas, and Related Statements.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

. . .

(f) *Determining the Accuracy of Plea.* Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

(g) *Record of Proceedings.* A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.