**The UNITED STATES**

v.

**Emmett Earl FULFORD,**
**Anthony J. Sanner.**

**Appeal of Emmett Earl**
**FULFORD, Appellant.**

**No. 86–3615.**

United States Court of Appeals,
Third Circuit.

Argued April 29, 1987.

Decided Aug. 4, 1987.

Joel B. Johnston (argued), George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for appellant.

Bonnie R. Schlueter (argued), Asst. U.S. Atty., J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for appellee.

Before WEIS and STAPLETON, Circuit Judges, and SAROKIN,* District Judge.

WEIS, Circuit Judge.

In this habeas corpus proceeding, we conclude that petitioner has failed to establish his numerous claims for relief. We decide that certain omissions from the Rule 11 colloquy on the petitioner's guilty plea were not serious enough to require vacation of sentence. Similarly, his charges of ineffective assistance of counsel do not demonstrate prejudice. We further determine that the Interstate Agreement on Detainers Act was not violated when federal authorities took petitioner from the county jail, where he was being held as a probation violator, to the district court for arraignment, plea and sentencing.

Petitioner seeks to vacate his sentence through this 28 U.S.C. § 2255 action. In addition to alleging violations arising from the federal conviction, petitioner also presents complaints based on his state convictions. This appeal follows the district court's denial of the habeas corpus petition.

While serving a term of imprisonment in Texas, petitioner was brought to Pittsburgh on March 9, 1984 for trial on charges of violating probation imposed by the Court of Common Pleas of Allegheny County,

* The Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation.

Pennsylvania, as well as on other pending state charges. A federal grand jury, sitting in Pittsburgh, indicted petitioner on March 29, 1984, while he was awaiting disposition of the state matters. The indictment alleged conspiracy in violation of 18 U.S.C. § 371 and substantive violations under 18 U.S.C. § 473, both arising out of the passing of counterfeit money in 1979.

Petitioner was transported to federal court from the county jail on three occasions, pursuant to writs of habeas corpus ad prosequendum for arraignment, entry of a guilty plea and sentencing. The court accepted the plea on March 29, 1984 and imposed sentence on July 9, 1984. Petitioner was sentenced to a term of imprisonment beginning at the conclusion of his Texas term.

In October, 1984, after pleading guilty to the state offenses, petitioner was sentenced in the state court. The court later revoked the probation on his previous Pennsylvania conviction and ordered him to serve a term on those earlier charges.

Petitioner now alleges numerous deficiencies in both the federal and state proceedings. Because he has not exhausted state remedies with respect to the Pennsylvania convictions, the district court properly dismissed those matters, and we will not review them.

1. Petitioner alleges he was not advised:
   Under Federal Rule 11(c)(1):
   (1) the maximum sentence included a mandatory special parole term;
   (2) the plea of guilty exposed him to a special assessment of $50;
   (3) fines might be imposed;
   (4) of the nature of the charges.
   Under Rule 11(c)(2):
   (5) he had the right to be represented by an attorney at every stage of the proceeding against him;
   Under Rule 11(c)(3):
   (6) he had the right to persist in his plea of not guilty;
   (7) he had the right to the assistance of counsel at every stage of the trial.
   Under Rule 11(c)(4):
   (8) he waived his right to a trial.
   Under Rule 11(c)(5):
   (9) the court intended to question him under oath on the record, and in the presence of counsel about the offense to which he had pled;
   (10) his answers could be used against him in a prosecution for perjury or false statement.

On appeal, petitioner contends that (1) the district judge omitted from the colloquy significant areas of inquiry under Fed.R. Crim.P. 11; (2) counsel's inadequate performance violated the sixth amendment; (3) a factually incorrect presentence report deprived him of due process; and (4) his transfer from Texas to Pennsylvania violated the Interstate Agreement on Detainers Act.

## I.

## THE RULE 11 COLLOQUY

■ In his brief, petitioner enumerates ten instances where he contends the colloquy failed to comply with Rule 11.[1] Some of these references are patently frivolous. For example, he complains the judge did not advise him that the maximum sentence included a mandatory special parole term. In fact, the pertinent statute contains no such provision, nor was he sentenced to a special parole term. Similarly, he asserts that he was not told his guilty plea exposed him to a special assessment of $50, yet none was actually imposed.

Petitioner cites other instances in which the district judge allegedly departed from the provisions of the rule; nevertheless, the language used by the judge in his colloquy implicitly conveyed the information re-

Petitioner also complains that he was not advised of his right to confront witnesses on cross-examination under Rule 11(c)(3). He does not include this contention among his enumerated alleged violations (1)–(10); rather, he raises it in passing and treats it in a cursory manner. The record discloses that the district judge did, in fact, advise petitioner that he could stand trial and described the prosecution's burdens. The fact that the judge did not specifically mention the right of cross-examination is not enough to require relief in a collateral proceeding. *See United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (collateral appeal). *See also United States v. Stead,* 746 F.2d 355 (6th Cir.1984) (direct appeal).

With respect to alleged violations (1)—(5), the government asserts, and petitioner has not disputed, that they were not raised in the district court. For that reason alone, they are not properly subject to review on appeal. Moreover, we find no merit in them.

quired by the rule, although not tracking the text. Moreover, the record demonstrates that some of the alleged omissions did not occur, despite the petitioner's complaints to the contrary.

The government concedes, however, that the colloquy failed to cover three matters listed in Rule 11: petitioner was not advised of the right to persist in the plea of not guilty; he was not told of the right to assistance of counsel at every stage of the trial; and he was not informed that his answers could be used in a prosecution for perjury or false statement.

■ Petitioner relies on *United States v. Carter*, 619 F.2d 293 (3d Cir.1980); however, that case is not controlling. There we held that the failure of the district judge to advise the defendant of his right to assistance of counsel at trial was inherently prejudicial, and not harmless error. In that case, we concluded that the error mandated resentencing.

When *Carter* was decided, whether a harmless error standard would be applied to failures of compliance with the notice requirements of Rule 11 was an open question in this circuit. *See United States v. De Le Puente*, 755 F.2d 313, 314 (3d Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985). In 1983, however, the rule was amended to include subsection (h), which provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." *Id.*

Furthermore, *Carter* was a direct appeal. The case before us, a collateral attack under 28 U.S.C. § 2255, is governed by a different standard. In *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), concern with the need for finality of convictions based on guilty pleas prompted the Court to hold that a formal violation of Rule 11 does not constitute ground for relief if the error did not result in a "miscarriage of justice" or was not inconsistent with the "rudimentary demands of fair procedure." *Id.* at 783, 99 S.Ct. at 2087. In *Timmreck*, the petitioner was not advised that a special parole term could be added to the sentence. The Court

concluded that this omission was not reversible error because the petitioner did not "argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty." *Id.* at 784, 99 S.Ct. at 2087.

The government acknowledges that petitioner was not advised of his right to assistance of counsel at every stage of the trial, as specified in Rule 11(c)(3). The record shows, however, that he was represented by counsel at both the plea colloquy and sentencing.

When asked if he had been given a full opportunity to talk with his attorney and whether he was satisfied with the services he had received from counsel, petitioner answered, "yes." After advising petitioner of his right to stand trial, the judge further commented, "in case of an adverse verdict, you would have a right of appeal, and if you couldn't afford counsel, counsel would be appointed." The judge asked, "You understand that?" Petitioner replied, "Yes Sir." In other parts of the colloquy, the judge outlined trial procedures and defined the prosecution's burden to prove its case.

The record establishes that this was not the first time petitioner had contact with the criminal law system; in fact, he had been convicted of offenses in the state courts of Texas and Pennsylvania. Notably absent from the record here is any allegation by petitioner that he did not know of his right to counsel at every stage of the proceeding or that he would not have entered a guilty plea had he been so advised. As we said in *United States v. Horsley*, 599 F.2d 1265 (3d Cir.) (*en banc*), *cert. denied*, 444 U.S. 865, 100 S.Ct. 135, 62 L.Ed.2d 88 (1979), the petitioner in a collateral proceeding must demonstrate prejudice from an alleged violation of Rule 11. Petitioner here has not even asserted prejudice, let alone produced evidence of its existence.

In view of all the circumstances here, we conclude petitioner has not made an adequate showing that the failure to advise him in *haec verba* of his continued right to

counsel during trial had any effect on his decision to plead guilty.

█ Petitioner contends that the trial judge neglected to tell him of the right to persist in a not guilty plea under Rule 11(c)(3). Although the judge did not use those precise words, he inquired whether petitioner knew he had "a right to stand trial." In addition, the judge asked if petitioner understood that "the government must prove all of the elements of the charge against you to the satisfaction of all twelve members of the jury if you ask for a jury trial." Petitioner responded affirmatively to each of the questions. Implicit in those answers is an acknowledgement that petitioner knew he had the right to persist in a plea of not guilty and proceed to trial. We find no cause for relief on this phase of the colloquy.

█ We dismiss the petitioner's contention that the court violated Rule 11 by failing to advise him that he would be subject to prosecution for perjury or false swearing. This complaint is meritless because no such prosecution has been initiated or is contemplated. Although the admonition should have been given, its omission has no significance at this juncture.

Undoubtedly, the trial judge was convinced that petitioner freely and voluntarily entered his plea with full knowledge of the possible consequences. We recognize the concern of conscientious district judges that the plea colloquy be used to make relevant findings and that it not be reduced to a meaningless oral questionnaire. Nevertheless, the issues raised here demonstrate once again that faithful adherence to the text of Rule 11 or the standard colloquy contained in the Bench Book can forestall needless appeals. Plodding through the litany, which may not be immediately necessary for the critical determinations on voluntariness, might consume a few additional seconds, but will ultimately save time by preventing appeals or collateral proceedings.

Rule 11 has a dual purpose—not only to assure the validity of the plea, but also to deter meritless appeals. We, therefore, reiterate our suggestion that the district judges "dot the i's and cross the t's" and follow the language of the rule, however extraneous or redundant it may appear at the time.

## II.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Plaintiff contends that his counsel was ineffective in failing to file pretrial motions, particularly on the grounds of pre-indictment delay and vindictive prosecution; failing to require compliance with Rule 11; and failing to insure preparation of an accurate presentence report. In addition, petitioner complains of his counsel's conduct in the state proceedings. Because the last issue has not been submitted to the state courts, we will not review it at this time.

The standard for determining ineffectiveness of counsel in criminal procedures was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There, the Court held that "the proper standard for attorney performance is that of reasonably effective assistance" based on the circumstances that existed at the time counsel acted. *Id.* at 687, 104 S.Ct. at 2064. The *Strickland* test contains two components. If the errors were so serious that counsel did not perform the function guaranteed by the sixth amendment, the court must then determine whether the defendant was prejudiced by the deficient representation. *Id.* at 687, 104 S.Ct. at 2064. Thus, the defendant has the burden of demonstrating a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In *McNeil v. Cuyler*, 782 F.2d 443, 449 (3d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 654, 93 L.Ed.2d 709 (1986), we read *Strickland* as requiring the courts to decide first whether the assumed deficient conduct of counsel prejudiced the defendant. We concluded that the circumstances present in *McNeil* did not establish a rea-

sonable probability that the result of the trial would have differed had representation by counsel been more vigorous. Although the outcome might have been otherwise, that possibility was not " 'sufficient to undermine confidence in the outcome.' " *Id.* at 451, quoting 466 U.S. at 694, 104 S.Ct. at 2068.

## A.

### PRE–INDICTMENT DELAY

■ The distribution of counterfeit money occurred in April, 1979, but the indictment was not returned until March, 1984, almost five years later. Other than that lapse of time, petitioner asserts no basis for a violation of the due process clause of the fifth amendment.

In *United States v. Sebetich,* 776 F.2d 412 (3d Cir.1985), we emphasized that "[t]o invoke the extreme sanction of dismissal of the indictment[ ] under the Due Process Clause," the defendant must prove that the delay was a deliberate device to gain an advantage over him and that it caused actual prejudice in presenting a defense. *Id.* at 430. The statute of limitations is a defendant's primary guarantee against the prosecution of stale criminal charges. *See United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). To establish a constitutional violation, a defendant must show intentional delay and actual prejudice.

Petitioner fails to advance grounds demonstrating that a motion to dismiss based on pre-indictment delay carried any potential for success. He, therefore, has not established a foundation for asserting prejudice caused by his counsel's decision to forego filing a motion that lacked a basis in fact and law.

## B.

### PROSECUTORIAL VINDICTIVENESS

■ Petitioner contends that a secret service agent told him the Allegheny County district attorney had "badgered" and "pressured" the government into seeking the indictment for counterfeiting. Supposedly, the district attorney used this tactic to coerce petitioner into assisting the prosecution of an individual named Schultz in state court. These allegations fail to set out a claim of vindictiveness on the part of the United States attorney because the charges appear to be directed against the Allegheny County district attorney.

The record demonstrates that defendant did commit an offense against the United States and that the indictment was properly brought in the Western District of Pennsylvania. No evidence suggests that the federal prosecutor participated in the state's investigation or the prosecution of Schultz. In addition, the chronology listed in the defendant's brief shows that the federal indictment was returned before petitioner refused to cooperate with the county district attorney.

A somewhat similar assertion was made in *United States v. Oliver,* 787 F.2d 124 (3d Cir.1986). There, we noted that separate sovereigns have the right to bring increased charges or simultaneous prosecutions and that prosecutorial vindictiveness does not result when the decision to indict is based on proper factors. Petitioner here has not established grounds for a claim of vindictiveness. Accordingly, he has not demonstrated prejudice from his counsel's failure to file a motion resting on an insupportable claim.

## C.

### FAILURE TO INSURE COMPLIANCE WITH RULE 11

■ We have concluded that because Rule 11 was substantially followed, petitioner can show no prejudice in the court's deviation from the text. Petitioner alleges, however, that counsel was ineffective in failing to take a direct appeal from the violation of Rule 11. Significantly, he has not demonstrated the likelihood of success of such an appeal, nor has he alleged that he wished to take an appeal at that time. In view of the pending state proceeding, it

is quite likely that the strategy petitioner adopted enabled him to use the federal sentence as an argument to secure more lenient treatment in the state court. Indeed, this tactic may well have succeeded. We fail to find any ineffectiveness of counsel in this circumstance.

### D.

### FAILURE TO INSURE CORRECTION OF THE PRESENTENCE REPORT

■ Although this complaint is unclear, petitioner apparently contends that counsel failed to notify prison authorities of corrections that had been made in his presentence report at the time of sentencing. Even if that assertion is correct, it does not require vacating sentence as a remedy for conduct occurring after the sentence was imposed. In any event, administrative procedures are available to amend the presentence report for the petitioner's benefit.

The record reveals that the sentencing judge credited the petitioner's version of a conviction in North Carolina for simple assault, rather than for armed robbery as the report originally read. When asked if that was the only correction he could offer, petitioner answered, "Yes." The petitioner's allegation does not constitute a basis for relief under § 2255.

### III.

### VIOLATION OF INTERSTATE AGREEMENT ON DETAINERS ACT

Petitioner alleges he was transferred from Texas to Pennsylvania at the request of Pennsylvania authorities in violation of the provisions of Article IV of the Interstate Agreement on Detainers Act (IADA). 42 Pa.Cons.Stat.Ann. § 9101. The federal arrest warrant was not served on petitioner until some weeks after his arrival in Pennsylvania. He suggests that, in some way, the alleged violation by the state authorities carried over to the federal officials.

■ This contention is fatally flawed. Petitioner fails to recognize the fundamental principle that entry of a guilty plea acts as a waiver of the provisions of the IADA. *United States v. Palmer,* 574 F.2d 164 (3d Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978). *See also Beachem v. Attorney General of Missouri,* 808 F.2d 1303 (8th Cir.1987); *Camp v. United States,* 587 F.2d 397 (8th Cir. 1978). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). That doctrine, derived from rulings for alleged constitutional violations, applies also to statutory violations. Thus, petitioner here cannot succeed on his IADA claim.

On its merits as well, the alleged IADA violation claim must fail. As one of his arguments, petitioner asserts that he was paroled by Texas authorities on June 13, 1984, after entry of his guilty plea but before sentencing in federal court. He argues that his return to the Allegheny County jail before all federal proceedings against him were completed violated Article IV(e) of the IADA because, as of the June date, the county jail became his original place of confinement.

■ The petitioner's convoluted argument overlooks several additional significant points. He does not allege that a federal detainer was ever lodged against him while he was in the Allegheny County jail. Although an arrest warrant was issued against him in April, 1984, an arrest warrant is not a detainer. In *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Court referred to the legislative history of the IADA, observing that the House and Senate reports described detainer as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising him he is wanted to face pending criminal charges in another jurisdiction.' " *Id.* at 359, 98 S.Ct. at 1846. The Court then concluded that a writ of habeas corpus ad prosequendum did not act as a detainer.

In this case, there is even less reason to conclude that an arrest warrant acts as a detainer. Because it is directed to the arrestee and not to the institution in which he is confined, a warrant cannot fairly be considered notice to the institution's officials. As *Mauro* holds, a writ of habeas corpus ad prosequendum does not trigger the IADA provisions in a federal case unless a detainer previously had been filed by federal authorities. *Id.* at 361, 98 S.Ct. at 1848.

■ Moreover, the IADA applies only to individuals serving a term of imprisonment. Accepting the petitioner's contention that the Texas authorities released him from their custody in June, 1984, he was no longer serving a term of imprisonment for that state (Texas) but was being held at the Allegheny County jail as a Pennsylvania probation violator. As such, he was not subject to the provisions of the IADA. *See United States v. Dobson*, 585 F.2d 55 (3d Cir.), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978). Consequently, even according to the petitioner's theory, his trip to the federal court after June was not covered by the IADA.

■ As we pointed out in *Dobson*, a pretrial detainee or parole violator has no interest in institutional programs of treatment or rehabilitation. The statute's goal is that uncertainties of pending criminal proceedings not obstruct those prison programs. That purpose is not frustrated by the absence of detainees who are not serving a term of imprisonment. Because no Texas prison rehabilitation programs were available to petitioner after that state's custody terminated, the actions of the federal officers in bringing him to the federal courthouse did not interrupt a current prison program of treatment or rehabilitation in either state.

■ Petitioner would somehow hold the federal authorities *in pari delicto* with the state officials who allegedly violated the IADA, but he does not charge that the federal and state authorities cooperated to bring him from Texas to Pennsylvania. The record reveals only that the federal indictment did not issue until after petitioner had been held in the Allegheny County jail for some weeks. We find no basis for assuming that the federal authorities took any part in the initial transfer of petitioner to Pennsylvania.

■ We do not ignore the fact that failure to grant a pretransfer hearing under the IADA, the basis of the petitioner's complaint here, is not a fundamental defect that may be reviewed in a collateral proceeding. *See Shack v. Attorney General of Pennsylvania*, 776 F.2d 1170 (3d Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986). *Cf. United States v. Williams*, 615 F.2d 585 (3d Cir. 1980).

■ Similarly, we are not convinced that the IADA applies to the petitioner's transportation from Texas at the request of the Pennsylvania authorities. That transfer apparently was made on two bases: (1) petitioner was a probation violator in Pennsylvania, and (2) he was wanted for prosecution on separate state offenses. The latter charges come within the terms of the Act, but the probation violation does not.

In *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), the Supreme Court held that Article III of the IADA did not apply to a person sought for violation of probation. The language of Article III, describing the offenses for which transfer may be initiated, uses the phrase "any untried indictment, information, or complaint." The Supreme Court reasoned that this wording related only to criminal charges stemming from a traditional prosecution with the full panoply of due process rights. A probation or parole revocation hearing, therefore, falls outside the scope of Article III.

This case does not come under Article III of the IADA because here the state, not the prisoner, instigated the transfer to Pennsylvania. When a state desires to gain custody of a defendant who is imprisoned in another jurisdiction, Article IV of the IADA supplies the requisite procedure. *See Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The relevant language of Articles III and IV, how-

ever, is identical, with both provisions using the words, "untried indictment, information or complaint."

Applying the Supreme Court's reasoning that Article III does not apply to probation violators, we similarly conclude that Article IV is not pertinent. Consequently, the IADA is not applicable to the extent that Pennsylvania acquired custody from Texas for the purpose of resolving the petitioner's probation violations. There could be no violation of the IADA while he was lodged in the Allegheny County jail, at least until October, 1984, when he was resentenced on probation violation charges. In sum, petitioner advances no valid argument of an IADA violation.

After a comprehensive review of all allegations raised by petitioner in this case, we conclude that he has failed to establish grounds for relief under § 2255. Accordingly, the judgment of the district court will be affirmed.

William A. Hebe, Spencer, Gleason & Hebe, Wellsboro, Pa., for appellee Dale "Bill" Russell, Sheriff.

C. Edward S. Mitchell (argued), Mitchell, Mitchell & Gray, Williamsport, Pa., for appellee Potter County Com'rs.

Robert H. Vesely (argued), John M. Humphrey, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, Pa., for appellants.

Before SLOVITER and STAPLETON, Circuit Judges, and SHAPIRO, District Judge.*