**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony MAENZA, Defendant-
Appellant.**

**No. 72–1019.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1972.

Decided March 28, 1973.

Julius Lucius Echeles, Carolyn Jaffe, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Robert A. Filpi, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

Anthony Maenza appeals from his conviction by a jury of violating 18 U.S.C. § 1010.[1] The district court denied his motions for judgment of acquittal notwithstanding the verdict and for a new trial. Maenza was sentenced to one year in prison and was fined $500.

On July 5, 1966, defendant and his wife made arrangements with a salesman for a construction company to obtain a garage for their home. The salesman entered information supplied by Maenza onto a credit application form of the American National Bank and Trust Company of Chicago. Maenza,

---

[1] At the time of the crime, 18 U.S.C. § 1010, "Federal Housing Administration transactions," provided:

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

his wife, and the salesman then signed the form. In addition to eliciting information for the credit application, the salesman explained to the couple that "a FHA application would also need to be signed because the bank might require that the loan be made on a FHA basis . . . ." The Maenzas then signed a form, which was blank except for the date, entitled "Credit Application for Property Improvement Loan." The salesman further stated "that in the event of the approval of a FHA loan . . . a notice would be sent out to the buyers informing them that the loan had been approved . . . ."

Immediately under the title of the second, or blank, form were the words "This application is submitted to obtain credit under the provisions of Title I of the National Housing Act." The form contained several references to the Federal Housing Administration (FHA) and had space for data such as that requested in the bank's credit application that defendant had first signed. Above the signature line was a warning:

"Any person who knowingly makes a false statement or a misrepresentation in this application or causes such a false statement or misrepresentation to be made shall be subject to a fine of not more than $5,000 or by imprisonment for not more than 2 years, or both, under provisions of the United States Criminal Code."

The construction company then forwarded the two forms to the bank, which made the loan and insured it with the FHA.

Maenza was later indicted for having willfully and knowingly made false statements to the American National Bank in the FHA credit application. The one-count indictment charged that defendant had made false statements concerning his employment and monthly salary "for the purposes of obtaining a loan" from the bank "with the intent that such loan would be offered to and accepted by the [FHA] for insurance . . . ."

On this appeal, the defendant concedes that the statements concerning his employment and salary were false and that he had known they were false.

■ Maenza's primary contention is that the statutory language "with the intent that such loan . . . shall be offered to or accepted by the [FHA] for insurance" required the Government to show not only that Maenza knew that the loan would be offered to the FHA but also that he knew it would be offered to the FHA *for insurance.* He further claims that the evidence was insufficient to establish this knowledge.

Maenza also emphasizes that the FHA form he signed was in blank. We are unsure what argument, if any, he intends to develop from this fact. A fair inference from the evidence is that he knew that the approval of the FHA might be sought and that the false information he had given the salesman would be transferred to the appropriate blanks in the FHA application. The crime charged centers on the making of false statements for the purpose of obtaining a loan.

As the Government points out, the statutory construction Maenza proposes would lead to a peculiar result: a person who knowingly made false statements for the purpose of obtaining a loan and who signed an FHA application which warned the signer that he was committing a federal offense would be judged not guilty because he did not know that the FHA insures loans rather than acts on loan applications in some other manner. The defendant cites no opinion which adopts his interpretation of 18 U.S.C. § 1010, that is, which expressly requires a specific finding on the "for insurance" phrase.

Our reading of the full statute and the cases involving it persuades us that the words "for insurance" do not refer to the intent needed for conviction of the crime charged here. The evidence proved that Maenza knowingly made false statements with the intent that the loan he sought would be submitted to the FHA for some purpose. This was

sufficient; the Government did not need to establish the defendant's knowledge of the FHA's functions, and we decline to attach the claimed talismanic significance to "for insurance." *See* United States v. Lee, 422 F.2d 1049, 1051 (5th Cir. 1970), where the Fifth Circuit stated:

> "An FHA credit application, as was used here, prominently states on its face that it is submitted to obtain credit under Title I of the National Housing Act and contains a warning that the making of a false statement or misrepresentation constitutes a federal crime. Where such an FHA form is used the jury may infer the existence of an intent that the loans should be sought from the Federal Housing Administration . . . . Thus, the fact that the loan applications were made on FHA forms provided sufficient evidence to support the jury's finding as to Lee's intent."

*See also* Brilliant v. United States, 297 F.2d 385 (8th Cir. 1962), cert. denied, 369 U.S. 871, 82 S.Ct. 1140, 8 L.Ed.2d 275; United States v. Pesano, 293 F.2d 229, 231 (2d Cir. 1961). *Cf.* the statutory interpretations adopted in United States v. Schaar, 437 F.2d 886 (7th Cir. 1971), and United States v. Bolin, 423 F.2d 834 (9th Cir. 1970), cert. denied, 398 U.S. 954, 90 S.Ct. 1882, 26 L.Ed.2d 297.

The defendant also complains that the prosecutor, in his closing argument, made two erroneous and prejudicial statements: (1) "The fact . . . that [the defendant] knew [that this loan was insured] has been testified to"; and (2) "[The salesman's explanation for having someone sign an FHA application in blank] included . . . telling that [the loan] was federally insured." Defense counsel had unsuccessfully sought a mistrial on the basis of these remarks.

■ ■ The Government interprets the first statement as a permissible inference from the evidence. The form of the statement causes us to have some doubts about this explanation. However, we find no reversible error. Defense counsel strenuously and repeatedly denied the accuracy of the comment, and the trial judge supported those objections by saying that he did not recall such testimony and that he relied on the jury to remember what had actually been said.[2] Also, in his charge to the jury, the judge stated that the attorneys' closing arguments were not evidence. Finally, in light of our disposition of Maenza's main argument, the statement did not affect a central issue in the case and cannot be deemed prejudicial. For these same reasons, the prosecutor's second remark, which did misstate the evidence, was not reversible error.

■ Maenza also contends that the court erred in refusing his tendered instruction that if two inferences can be drawn from the evidence, one of innocence and one of guilt, the jury should draw the conclusion of innocence. Defendant cites the La Buy Manual on Jury Instructions § 6.01–4, 33 F.R.D. 523, 567 (1963).

The court's refusal to give the two-inference instruction was not error. The court adequately discussed the Government's obligation to prove Maenza guilty beyond a reasonable doubt. United States v. Lewin, 467 F.2d 1132, 1141 (7th Cir. 1972); United States v. Alexander, 415 F.2d 1352, 1358 (7th Cir. 1969), cert. denied, 397 U.S. 1014, 90 S.Ct. 1246, 25 L.Ed.2d 427 (1970).

Accordingly, we affirm the judgment of conviction of Anthony Maenza.

Affirmed.

---

2. The statements of the district court regarding the jury's ability to recall the testimony illustrate the difficulties of reviewing words on paper without the emphases, tones, and inflections of the human voice and without the facial expressions of the speaker. We venture to suggest that there are very few experienced trial lawyers who at some time have not in this situation heard these or similar words—and everyone in the courtroom knew that the judge was saying in effect, "Of course, this wasn't in the evidence, give the jury credit for knowing it wasn't, and let's get on with the argument."