**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ralph E. LOVETT, Jr.,
Defendant–Appellant.**

**No. 87–2131.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1988.

Decided April 21, 1988.

---

John J. Morrison, Chicago, Ill., for defendant-appellant.

Bradley W. Murphy, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Defendant-appellant Ralph Lovett applied to a private mortgage company, the West American Mortgage Company, for a mortgage to be insured by the Federal Housing Administration (FHA), which is part of the Department of Housing and Urban Development (HUD). Lovett stated in his application that he was employed by WGN Broadcasting in Chicago. At the time, Lovett was unemployed and he had never been employed by WGN Broadcasting. Lovett defaulted; the government foreclosed, and then prosecuted.

On May 15, 1987, the government filed an information charging Lovett with violating 18 U.S.C. § 1010. That statute punishes "[w]hoever, for the purpose of obtaining any loan ... with the intent that such loan ... shall be offered to ... the Department of Housing and Urban Development for insurance, ... makes ... any statement, knowing the same to be false...." Lovett, represented by a private lawyer he chose, appeared in open court to enter a guilty plea. Lovett had already entered into and signed a written plea agreement with the government, which was submitted to the court. After a colloquy with Lovett, the court accepted Lovett's guilty plea. Lovett does not and can not contend that the government coerced his plea or that he received ineffective assistance of counsel in choosing to plead guilty.

On July 10, 1987, the district court sentenced Lovett to one year and nine months in prison, three months less than the statutory maximum. Lovett was ordered into custody on the sentencing date and is apparently in prison now.

In this direct appeal, Lovett seeks (1) to reverse his conviction and dismiss the information on the ground that the information failed to state an offense under § 1010; (2) if not that, to set aside his plea under Fed.R.Crim.P. 11; and (3) if not that, to win resentencing.

We affirm Lovett's conviction and sentence. We will address Lovett's contentions in the order he presents them.

### I.

The information charged in part as follows:

1. On or about December 2, 1982 at Rock Island, ..., the defendant, ... for the purpose of influencing the action of the Federal Housing Administration, an agency of the United States Department of Housing and Urban Development in insuring a mortgage loan did make a false statement.

2. That is, the defendant did state in a Residential Loan Application that he was employed by WGN of Chicago, Illinois, when, as he then knew, he was not so employed.

Lovett contends that this information failed to charge a federal offense because it did not set forth to whom he made his false statement, how the person to whom he made the false statement was connected to HUD, and to which property the statement related.

We reject this contention. "The offense set forth in § 1010 requires proof of three elements: the making of a false statement in the application, knowing it to be false, for the purpose of obtaining a loan from the lending institution and influencing the FHA." *United States v. Leach,* 427 F.2d 1107, 1111 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). The information here adequately alleged all three elements, though it could have been more complete. We note in this regard that Lovett did not request a bill of particulars.

### II.

Lovett next contends that the district court did not comply with Fed.R.Crim.P. 11 in accepting his guilty plea. Lovett first

argues that the court did not advise him what he was charged with, as required by Rule 11(c)(1), or make sure there was "a factual basis for the plea." Rule 11(f). In particular, § 1010 requires "the intent that such loan ... shall be offered to or accepted [by the FHA] *for insurance....*" (Emphasis supplied.) Lovett contends that there is a specific insurance element to § 1010 which the district court did not address. While the court informed Lovett that "[t]he charge further claims that you made this false statement for the purpose of influencing the action of that agency," the court never mentioned insurance as Lovett's ultimate purpose. According to Lovett, there is no evidence that his purpose was to influence the FHA to insure the loan.

■ As often occurs, parts of the colloquy simultaneously satisfy both the "nature of the charge" and the "factual basis" requirements of Rule 11. *See United States v. Ray*, 828 F.2d 399, 405 (7th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 781, 98 L.Ed.2d 867; — U.S. —, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). To have had the intent required under § 1010, a defendant need not have thought that his loan application would be submitted to the FHA for insurance, as long as he thought it would be offered to the FHA for some purpose. *United States v. Maenza*, 475 F.2d 251, 253–254 (7th Cir.1973). "[T]he Government did not need to establish the defendant's knowledge of the FHA's functions, and we decline to attach the claimed talismanic significance to 'for insurance.'" *Id.* at 254; *see United States v. Jenkins*, 785 F.2d 1387, 1390–91 (9th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 192, 93 L.Ed. 2d 125; — U.S. —, 107 S.Ct. 288, 93 L.Ed.2d 262 (1986). *But cf. United States v. Hoag*, 823 F.2d 1123, 1127 (7th Cir.1987) (suggesting in dicta that the government is required to establish that defendant intended that the loan be offered to the FHA for insurance). The court emphasized twice to Lovett that he was charged with knowingly making a false statement for the purpose of influencing the FHA's action. This is the crime's essence. Each time, the court confirmed that Lovett understood. While

the court once mistakenly stated that the false statement was made directly to the Federal Housing Administration, at another point the court discussed with Lovett how the plea agreement contemplated that the government would not bring further charges for "any false statement to West America Mortgage Company." In addition, in the plea agreement Lovett admitted that he had "knowingly and intentionally made a false statement on a Residential Loan Application submitted to the Federal Housing Administration for approval."

The district court also listened to the government recite the facts it would have proved at trial, a procedure which the Notes of the Advisory Committee and cases expressly contemplate. Fed.R.Crim. P. 11(f) advisory committee's note (1966); *Ray*, 828 F.2d at 406. The prosecutor described that Lovett applied for a loan at the West American Mortgage Company, a private mortgage company, that the mortgage was to be insured by the FHA, and that FHA employees would testify that what Lovett said about his employment would influence the FHA in deciding whether to insure the loan. In response to an inquiry from the court, Lovett confirmed that that was an accurate rendition.

In addition, the district court read the information to Lovett. He then asked Lovett whether he understood what he was charged with. Lovett responded that he did. Lovett also acknowledged in the plea agreement that he had read the information and understood the nature and elements of the crime he was charged with and that his attorney had fully explained the charge to him. This was a relatively simple charge. The information cited § 1010, which in turn mentions "for insurance," which is not a technical term which Lovett, who has attended college, could not understand. *See United States v. Guichard*, 779 F.2d 1139, 1144 (5th Cir.), *cert. denied,* 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986); *Ray*, 828 F.2d at 407. Finally, the district court asked Lovett to explain in his own words what he did. Lovett explained how he filled out a loan application in which he "implied" that he

worked at WGN Broadcasting because "I wanted a house.... I just assumed you need to have a place to work to get the loan and get the house." In sum, Lovett understood the nature of the statute he was charged with violating, and there was an adequate factual basis for the plea. *See Ray*, 828 F.2d at 411–12.

### III.

This could have been a frivolous case in which a defendant pleads guilty and then seeks on appeal to vacate the plea when the sentence is longer than expected. Lovett thought he would be better off pleading than by going to trial; he was wrong. But the district court made this appeal possible by not tracking the precise requirements of Fed.R.Crim.P. 11. In particular, the court did not specifically advise Lovett of his right to plead not guilty, as required by Rule 11(c)(3), or his right to appointed counsel at trial.

■ To determine whether a district court has complied with Rules 11(c)(2)–(5), " '[t]he test on appeal is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights.' " *Ray*, 828 F.2d at 414 (quoting *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam)); *see* Fed.R.Crim.P. 11(c) advisory committee's note (1974). Here, the court did not tell Lovett at the plea hearing that he has the right to plead not guilty. But this error was harmless. First, in the written plea agreement Lovett acknowledged that if he continued to plead not guilty, he would be afforded a trial, and that he had a right to a jury trial. Second, the court personally discussed with Lovett that he was entitled to a jury trial, plus what would happen at a trial and the various trial rights he would forego as a direct consequence of his guilty plea. Then, in summing up—with Lovett there— the court stated that "he knows his right to a trial." Thus, the plea agreement and the colloquy show that Lovett "was fully informed, in substance, that he had a right to plead not guilty or to persist in the plea of not guilty.... The court's detailed explanation of the rights attendant to a jury trial

... indicate that [defendant] was undoubtedly aware of his right to persist in his plea of not guilty." *Ray*, 828 F.2d at 414.

■ Rule 11(c)(3) also requires the district court to tell a defendant that there is "at that trial the right to the assistance of counsel." The court here instead informed Lovett that "your attorney" could cross-examine witnesses and offer evidence. The transcript relates the following account:

Q. Do you further understand that in the course of trial witnesses for the government would have to come into open court and testify under oath in your presence, and your attorney could cross-examine the witnesses for the government, object to evidence offered by the government and offer evidence on your behalf?

A. Yes, your Honor, I understand that.

The government argues that by informing Lovett that his counsel could cross-examine witnesses, the court (implicitly) informed Lovett of his right to counsel. But telling a defendant what a lawyer can do at trial does not inform him that a lawyer can be appointed if he cannot afford one. Lovett's finances were not sound, which—if Lovett did not know that counsel could be appointed—could have affected his decision as to how to plea.

Rule 11's precise language does not help Lovett. 11(c)(3) speaks of telling a defendant about the right to the *"assistance of counsel"*—wherever that lawyer comes from—not about the "right *to* counsel." Telling a defendant about the "right *to* counsel" is in comparison required by 11(c)(2), which orders the court to inform a defendant about the right to be represented by counsel at every stage of the proceedings, and if necessary appointed counsel, but only "if the defendant is not represented by an attorney," presumably because the drafters thought that there would otherwise be no need for this knowledge. Lovett was represented by an attorney. Therefore, the district court was not required to inform Lovett that even if he could not afford one, an attorney could be appointed to assist him at trial.

In any event, there is no suggestion in the record that Lovett did not know about his right to counsel at trial, whether by his attorney informing him at the time, the court informing him when it advised him at the outset that he could proceed *in forma pauperis*, or through his own extensive experience as a criminal defendant. Lovett does not allege, all the more submit an affidavit, that he did not know about his right to appointed counsel at trial (or that if he had known, he would have chosen to go to trial).

The purpose of Rules 11(c)(2)–(5) is to make sure that a defendant's plea is voluntary. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969). "The long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). Under this test, Lovett's guilty plea is valid. It is also unimpeached; even now Lovett does not allege that he did not do what he admitted in open court to having done. Accordingly, if the district court's failure to mention to Lovett his right to appointed counsel was error, it was harmless. Fed.R. Crim.P. 11(h). *See United States v. Caston*, 615 F.2d 1111, 1115–16 (5th Cir.), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). *See also United States v. Stead*, 746 F.2d 355, 357 (6th Cir.1984), *cert. denied*, 470 U.S. 1030, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985); *Guichard, supra*, 779 F.2d at 1142–43.

As this appeal illustrates, however, a district court should track the language of Rule 11 unless there is a persuasive reason for not doing so. As the Third Circuit recently stated,

Undoubtedly, the trial judge was convinced that petitioner freely and voluntarily entered his plea with full knowledge of the possible consequences. We recognize the concern of conscientious district judges that the plea colloquy be used to make relevant findings and that

it not be reduced to a meaningless oral questionnaire. Nevertheless, the issues raised here demonstrate once again that faithful adherence to the text of Rule 11 ... can forestall needless appeals. Plodding through the litany, which may not be immediately necessary for the critical determinations on voluntariness, might consume a few additional seconds, but will ultimately save time by preventing appeals or collateral proceedings.

Rule 11 has a dual purpose—not only to assure the validity of the plea, but also to deter meritless appeals. We, therefore, reiterate our suggestion that the district judges "dot the i's and cross the t's" and follow the language of the rule, however extraneous or redundant it may appear at the time.

*United States v. Fulford*, 825 F.2d 3, 8 (3d Cir.1987). *See Ray*, 828 F.2d at 404, 413–14.

## IV.

The district court did not abuse its discretion in imposing a sentence—within the statutory limit—of one year and nine months. *See generally United States v. Bush*, 820 F.2d 858, 862 (7th Cir.1987); *Ray*, 828 F.2d at 425–26. Based upon information contained in the presentence report, the court reasonably believed that Lovett was an inveterate liar and thief who needed a relatively long sentence to deter him so that he would put his creativity to better use in the future.

Lovett claims on appeal that his sentence was predicated upon the presentence report's allegation that he had borrowed without authority $15,000 from his aging father's life insurance. At the sentencing hearing, probation officer John Hession testified in support of the allegation. Hession relied upon a report obtained from the FBI reflecting an FBI agent's interview with Lovett's parents. This FBI report was not made part of the record, and Lovett's parents, as well as the FBI agent, did not testify. Lovett contends that the allegation was inaccurate hearsay.

A district court may properly rely on hearsay in sentencing. *United States v. Wellman,* 830 F.2d 1453, 1469 (7th Cir. 1987); *United States v. Cameron,* 814 F.2d 403, 407 (7th Cir.1987). Lovett had an opportunity to rebut what he contends is the erroneous and uncorroborated hearsay. *See Cameron,* 814 F.2d at 407; Fed.R. Crim.P. 32(c)(3). Lovett testified at the sentencing hearing on his own behalf and his attorney examined probation officer Hession. The district court found the version in the presentence report to be accurate. Apparently the court was not impressed by Lovett's rebuttal: that he had stolen from his mother's, not his father's, insurance.

AFFIRMED.