**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Keith PEDEN,**
**Defendant–Appellant.**

No. 88–1307.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1988.

Decided April 19, 1989.

Diana N. Cherry, Metnick & Barewin, Springfield, Ill., for defendant-appellant.

Hilary W. Frooman, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant William Keith Peden appeals his sentence resulting from his conviction of making a false statement to a federally-insured bank. The district court sentenced him to two years' imprisonment with the sentence suspended for all but six months, five years' probation to follow and ordered him to pay restitution in the amount of $84,225.06 plus any accrued interest. The restitution order was made pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579–80 ("VWPA"). We affirm in part, vacate the defendant's sentence as to the amount of restitution, and remand for resentencing.

I

On September 3, 1987, the defendant was charged with making a false statement to a federally-insured bank in violation of 18 U.S.C. § 1014. The indictment alleged that the defendant made the false statement to obtain a $65,000 loan from the American State Bank of Bloomington, Illinois ("the bank"). The defendant led the bank to believe that the loan proceeds would be used for a convenience store that he and two partners intended to open and submitted as proof of their intentions a fictitious purchase order for refrigeration equipment. On November 2, 1987, the defendant appeared in court with counsel and the court rejected his plea of *nolo contendere.*[1] Immediately thereafter, the defen-

---

**1.** The defendant attempted to enter the *nolo*    *contendere* plea to preserve his defenses in six

dant changed his plea of *nolo contendere* to a plea of guilty. Prior to accepting the defendant's plea, the court questioned him concerning his education and apprised him of his Sixth Amendment rights and the elements of the offense charged. The court also informed the defendant that his guilty plea to the offense charged carried a possible maximum penalty of two years' imprisonment and a fine of $5,000 and/or a minimum penalty of straight probation. The district judge did not mention the possibility of restitution. The court advised the defendant that it was not bound by the prosecutor's recommended sentence structure and the government set forth the factual basis underlying the charge. Thereafter the district judge determined that the defendant understood the charges against him and their possible penalties, and proceeded to accept the defendant's plea of guilty.

About one month later, on December 16, 1987, Peden's counsel requested leave of the court to withdraw as the attorney of record. The court granted the attorney's request on January 4, 1988, and the defendant advised the court that he wished to retain new counsel and withdraw his plea of guilty. On his next court date, January 26, 1988, the defendant sought an adjournment to retain new counsel. The court granted a continuance, but warned the defendant that with or without counsel, the court would entertain his motion to withdraw his guilty plea at the hearing scheduled for February 8, 1988. The defendant appeared at that hearing without counsel and informed the court that he wished to withdraw his motion to set aside his plea of guilty and proceed to sentencing without counsel. At this hearing, the court again inquired whether the defendant wished to have counsel appointed for him and once

more questioned him as to his level of education. The court determined that the defendant was knowingly and intelligently waiving his right to counsel, and fully understood the charges against him, as well as the possible maximum and minimum penalties that could be imposed. The court thereafter accepted the defendant's plea of guilty and proceeded to sentencing. The court then proceeded to hear testimony and argument and sentenced Peden to two years of incarceration with a suspended sentence for all but six months, and five years' probation thereafter, and ordered him to pay restitution in the amount of $84,225.06 under the provisions of the VWPA in addition to the interest accruing from the original loan until paid in full.

On appeal, the defendant argues that the district court erred in failing to comply with the admonition requirements regarding sentencing and restitution set forth in Fed.R.Crim.P. 11(c)(1), and by ordering restitution in an amount exceeding that of the loan.

## II

■ The defendant initially contends that the district judge failed to comply with the admonition requirements set forth in Fed.R.Crim.P. 11(c)(1) because he failed to inform the defendant that his sentence could include five years' probation and restitution in the amount of $84,225.06 plus interest. Rule 11(c)(1) provides, in pertinent part:

"(c) *Advice to Defendant.* Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

or seven civil lawsuits involving the bank, the defendant, and his partners in the failed convenience food store venture. He was well aware that a plea of guilty in his criminal case could be introduced as an admission against him in the related civil litigation. The defendant argues that his attempt to enter a *nolo contendere* plea demonstrates that he was not prepared to expose himself to monetary liability for damages which may have resulted from the acts at

issue in this case. The defendant contends that the record does not reflect his understanding that by pleading guilty he would expose himself to such liability, in the form of restitution, in his criminal sentence. We note, however, that the VWPA does not expand the collateral estoppel effect of a criminal conviction so as to convert a criminal sentence into a civil judgment. *United States v. Palma,* 760 F.2d 475, 479 (3d Cir.1985).

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense...."

As a rule, noncompliance with Rule 11 constitutes reversible error in this circuit. However, literal compliance is not necessary. The issue is "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Ray*, 828 F.2d 399, 405 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988) (quoting *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam)). As the Supreme Court recognized in *McCarthy v. United States*, 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 1171–72 n. 20, 22 L.Ed.2d 418 (1969), "[m]atters of reality, and not mere ritual, should be controlling."

■ We have no trouble in disposing of the defendant's claim that the district judge violated Rule 11(c)(1) by failing to inform him that his sentence could include five years' probation. In support of this claim, the defendant contends that a sentence of six months' imprisonment and five years' probation exceeds a sentence of two years' imprisonment and, thus, the district judge failed to inform him of the possible maximum penalty for the offense with which he was charged. We disagree with this ridiculous argument.

In *United States v. Suter*, 755 F.2d 523 (7th Cir.1985), we held that Rule 11 entitles the defendant "to be informed of the direct, not all the collateral, consequences of his plea.... Compliance with this rule requires the sentencing court to explain to the defendant the *definite, immediate and automatic consequences of his plea....*" *Id.* at 525 (emphasis added). It is well settled that the grant or denial of a period of probation rests within the sound discretion of the sentencing court, and thus, the

defendant has no logical reason to assume that a period of probation is automatic.

Moreover, although the word "penalty" is not explicitly defined in the text of Rule 11, "it is evident from the Advisory Committee Notes to the Rule's 1984 Amendment that 'penalty' means the statutory nominal sentence ... [which is] 'usually readily ascertainable from the face of the statute defining the crime.'" *United States v. Garcia*, 698 F.2d 31, 33 (1st Cir. 1983) (quoting Fed.R.Crim.P. 11 Advisory Committee Notes on 1974 Amendment). Here, the defendant was prosecuted under 18 U.S.C. § 1014, which allows for a fine of not more than $5,000 and/or imprisonment for not more than two years, or both. The record clearly establishes that the district court fully apprised the defendant of these penalties:

"THE COURT: Now, as I indicated, this is a federal felony and carries with it a penalty of up to two years imprisonment and a fine of up to five thousand dollars. Now, that is the very maximum that could be imposed by the Court, two years imprisonment, five thousand dollar fine. The very minimum would be straight probation, no fine, and anywhere between and inclusive of that bottom and that top, the very minimum and the very maximum, is the Court's area and parameters for discretionary sentencing. That's my job. Understand that?

THE DEFENDANT: Yes."

Given that the defendant received only six months of actual confinement, along with five years' probation, the defendant obviously received less than the maximum penalty of two years' straight incarceration allowed by law. Indeed, six-months' imprisonment and five-years' probation in which a person is free from eighteen additional months of confinement certainly cannot be considered, under any stretch of the imagination, as detrimental and as severe a penalty as the possible maximum two-year term of imprisonment.

We have no difficulty in approving the district judge's admonitions to the defendant concerning his possible sentence. The district judge informed the defendant of

the sentencing parameters set forth in 18 U.S.C. § 1014 and sentenced him to a six-month term of imprisonment and five years' probation—well within those parameters. Accordingly, we hold that the district judge complied with the requirements of Rule 11(c)(1) with respect to advising the defendant of the range of possible penalties that could be imposed under section 1014.

■ More problematic, however, is the defendant's contention that the district court violated Rule 11(c)(1) by failing to inform him that payment of restitution could be made a requirement of the sentence resulting from his plea of guilty. Although it is clear from the record that the district court properly apprised the defendant of the maximum term of imprisonment and the maximum fine under section 1014, it is equally clear that the court failed to advise the defendant of the possibility that the court might order him in the criminal proceeding to pay restitution to the bank. Thus, the court failed to comply with the strictures of Rule 11(c)(1) with respect to expressly informing the defendant of the possibility that restitution may be imposed.

This conclusion, however, does not end our inquiry. This court has previously recognized that a district court's failure to comply with Rule 11(c)(1) is harmless error where the record establishes that the defendant nevertheless understood the charges against him and their direct consequences. *See, e.g., United States v. Lovett,* 844 F.2d 487, 492 (7th Cir.1988); *Ray,* 828 F.2d at 405; *United States v. Darling,* 766 F.2d 1095, 1099 (7th Cir.), *cert. denied,* 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). The government contends that the record read in its entirety reveals that the defendant understood that the court could order restitution as part of his sentence and, thus, the district court's failure to inform the defendant of the possibility of restitution was harmless error. Upon review, we agree.

The transcript of the November 2, 1987, hearing at which the defendant attempted to enter a plea of *nolo contendere* clearly

establishes that the defendant had knowledge of the money he owed the bank. The defendant's counsel stated in open court in the presence of the defendant that the *nolo contendere* plea was made to avoid an adverse impact in the civil suits pending against the defendant and his partners:

"So, we—what we would like to do here, Your Honor, is enter a plea of nolo contendere in order to not prejudice his rights in these civil cases that are still pending and that will probably go ahead and be litigated for the ensuing months or years....

Our position is simply, we're willing to come in and say, Judge, we're not contesting it, but we simply don't want to perhaps prejudice ourselves later down the line perhaps in these six or seven lawsuits that are still pending, and we're simply saying this may have been [sic] an adverse impact on those."

Thus, it is obvious that the defendant had knowledge of the possibility of restitution. It is clear from the above excerpt that the defendant had knowledge of the civil suits pending against him and that they were filed to force him to pay his share of restitution to the bank.

Restitution was also discussed at the final hearing held in the district court. The Assistant United States Attorney requested that the defendant pay restitution to the bank:

"Therefore, we believe first of all that the Defendant should be ordered to make restitution, but in lieu of restitution, we would ask the Court to order the Defendant to pay a fine in the same amount that he would owe the bank if the Court does not order restitution...."

Transcript of February 8, 1988, hearing at p. 19.

At this same hearing, the defendant stated that he understood restitution could be a part of his sentence, and argued for probation in order to meet the requirement of making restitution to the bank:

"THE DEFENDANT: *I think I should be given probation in order to—so that I can make restitution to the bank* for my share of the loan which the other

partners and myself are coming to terms somehow in the next few days with the bank and *I not be given restitution by the Court for the full amount of the loan* but only for my share because there were two other partners that did get some of the evidence /sic/ which was submitted for the loan.

THE COURT: Did the other partners sign the loan?

THE DEFENDANT: Yes, sir, two other partners.

THE COURT: Uh-huh.

THE DEFENDANT: And there was no intent to do wrong on my part at the time of the loan.

THE COURT: Well, you certainly knew, did you not, Mr. Peden, that the document that you presented to the Court— to the bank was false?

THE DEFENDANT: I didn't turn it in. I did get the document, but I am not the one who turned it in to the bank.

THE COURT: But you signed it, did you not?

THE DEFENDANT: Yes.

THE COURT: And you knew that it was going to be utilized by the bank. You knew it was going to be taken by the bank, didn't you?

THE DEFENDANT: Yes, sir.

THE COURT: And that it was going to be used for the purpose of—of granting you a loan?

THE DEFENDANT: Yes, sir.

THE COURT: All right. What else would you like to say?

THE DEFENDANT: *And that there is civil cases* [sic] *between the partners and the bank for restitution that are going on and still continuing at this time. They're in the deposition time now. They haven't come to an actual hearing yet.*"

Transcript of February 8, 1988 hearing at pp. 20–21 (emphasis added).[2] Given the statement above, it is obvious that the defendant knew that restitution was a possibility.

The defendant also acknowledged receiving and reading a copy of the presentence report which included a comment in the Victim Impact Statement that restitution could be ordered by the court as part of the defendant's sentence:

"Under the provisions of the Victim Witness Protection Act the defendant can be ordered to pay the above amount [a total of $84,225.06] as well as interest that will continue to accrue *until restitution is made in full. Restitution payments should be made payable to the American State Bank and sent to the following address:*

Mr. Marvin Gessell

Attorney-at-Law

P.O. Box 488

Bloomington, IL 61701"

Presentence Report for William Keith Peden at p. 6 (emphasis added).[3] Because the

---

**2.** The dissent asserts that the defendant's request for probation in order that he might make restitution to the bank fails to establish that he knew restitution could be imposed as part of his criminal sentence. The dissent apparently overlooks the rest of the defendant's statement and the context in which it was made. In responding to the Assistant United States Attorney's recommendation that the court order restitution as part of his sentence, the defendant specifically requested that "[he] not be given restitution *by the court* for the full amount of the loan." Given that this exchange took place at the defendant's guilty plea and sentencing hearing, we fail to understand how the dissent can argue that the defendant was unaware that the court could impose restitution as part of his criminal sentence. Indeed, it is quite illogical to presume that the defendant would have discussed the possibility of restitution with the judge presiding over his criminal case, nor would he have challenged the amount of restitution set forth in the presentence report if he truly was in doubt that restitution could be ordered.

**3.** Although the presentence report was not in existence at the time of the initial guilty plea hearing on November 2, 1987, the report did exist as of December 14, 1987. As noted in the above excerpt, restitution in the amount of $84,-225.06, as well as the address where the defendant was to send his restitution payments, were explicitly mentioned in the report. Moreover, although the record is unclear as to the specific date when the defendant received the report, it is most clear that the defendant had access to the report prior to the final guilty plea hearing, as the defendant called the United States Probation Officer on February 4, 1988, and requested that the probation officer make certain corrections in the report. Specifically, the defendant

defendant stated in open court that he had received and read a copy of the presentence report—and even made corrections in the document—the defendant cannot now be heard to say that he was unaware of the contents of the report.[4]

Although the defendant was not directly admonished by the district judge concerning restitution, it is well established that the colloquy between the trial court and a criminal defendant can vary from case to case as long as the defendant understood the direct consequences of his decision to enter a plea of guilty. *See, e.g., Darling,* 766 F.2d at 1098. Numerous facts in the record establish that the defendant was fully aware of the possibility that restitution could be imposed as part of his criminal sentence. Specifically, the defendant initially entered his guilty plea at the November 2 hearing when his attorney, speaking on his behalf and in the presence of the defendant, acknowledged Peden's awareness of his liability to the bank. After this hearing, the defendant had over three months to consider his decision to enter a guilty plea, and even stated that he considered withdrawing it, until the court accepted the plea at the February 8 hearing. At this hearing the defendant reaffirmed his decision to plead guilty and specifically stated that he had read and understood the criminal presentence report which explicitly referred to the defendant's liability regarding the making of restitution payments in the Victim Impact Statement. The record also reveals that the defendant called his probation officer four days earlier to request that changes regarding his liability to the bank be made. Thus, it is clear that the defendant had ample opportunity to

consider, and did in fact consider, his decision to plead guilty and was not taken by surprise when the court imposed restitution as part of his sentence as evidenced by the defendant's comments to the court as well as his acknowledgment of having read the statements contained in the *criminal* presentence report.

Considering the record in its entirety, we hold that the defendant understood that restitution was a possibility and that it was harmless error for the district court not to state explicitly to the defendant the possibility of including restitution payments in his sentence. Undoubtedly, from the record it is obvious the district judge was convinced that the defendant freely and voluntarily entered his plea of guilty with full knowledge of the possible consequences. As we recently recognized in *Lovett,* insuring that a defendant's plea is voluntary is the purpose of the procedures set forth in Rule 11. 844 F.2d at 492. We refuse to exalt form over substance, as the dissent proposes, and ignore the defendant's clear understanding that restitution could be part of his criminal sentence. It bears repeating that the Supreme Court in *McCarthy v. United States, supra,* stated that in determining whether a trial court has complied with Rule 11, "[m]atters of reality, and not mere ritual, should be controlling." 394 U.S. at 467–68 n. 20, 89 S.Ct. at 1171–72 n. 20. We note, however, that it is rather discouraging for an appellate court to have to advise trial judges time after time to adhere to the requirements of Rule 11 in accepting guilty pleas. *Darling,* 766 F.2d at 1098. *See, e.g., United States v. Cusenza,* 749 F.2d 473, 477 n. 3 (7th

informed the probation officer that he and his partners had reached an agreement with the bank regarding their respective shares of restitution: each agreed to pay $37,000 to the bank, a total of $111,000—a total which far exceeds the $65,000 face amount of the loan and the $84,-225.06 in restitution imposed by the court. Reading these facts in the context of the record in its entirety, as we always must, we are forced to conclude that the dissent's assertion that restitution in a far larger amount was not made known to the defendant until sentencing is contrary to the facts in the record.

4. In light of the fact that the defendant stated in open court that he had read the presentence report and that he made a telephone call to his probation officer requesting that changes be made in the report, we disagree with the dissent's contention that the Victim Impact Statement in the presentence report was the "best evidence" of the defendant's knowledge that restitution could be imposed by the sentencing court. The best evidence of the defendant's knowledge of this possibility is not the fact that the statement was included in the report, but the defendant's repeated assertions that he had read the report and understood its contents.

Cir.1984). As we recently stated in *Lovett,* "a district court should track the language of Rule 11 unless there is a persuasive reason for not doing so." 844 F.2d at 492.

" 'We recognize the concern of conscientious district judges that the plea colloquy be used to make relevant findings and that it not be reduced to a meaningless oral questionnaire. Nevertheless, the issues raised here demonstrate once again that faithful adherence to the text of Rule 11 ... can forestall needless appeals. Plodding through the litany, which may not be immediately necessary for the critical determinations on voluntariness, might consume a few additional seconds, but will ultimately save time by preventing appeals or collateral proceedings.... We, therefore, reiterate our suggestion that the district judges 'dot the i's and cross the t's' and follow the language of the rule, however extraneous or redundant it may appear at the time.' "

*Id.* (quoting *United States v. Fulford,* 825 F.2d 3, 8 (3d Cir.1987)). *See Ray,* 828 F.2d at 404, 413–14.

### III

The defendant next argues that the district court erred in imposing an amount of restitution in excess of $65,000—the amount of his loan from the bank. At sentencing, the court imposed as a condition of probation that the defendant make restitution to the bank in the amount of $84,225.06.[5] The defendant contends that he received no notice that the order of restitution could exceed $65,000, that the district court improperly calculated the amount of restitution, and further that the district court failed to consider the defendant's ability to pay in ordering restitution in the amount of $84,225.06.

■ At the outset, we dispose of the defendant's claim that the district court failed to apprise him that the amount of restitution could exceed $65,000. Rule

11(c)(1) only requires that the trial court inform the defendant that it *"may ... or-der* the defendant to make restitution to any victim of the offense." (emphasis added). The Advisory Committee Notes on the 1985 Amendment to Rule 11(c)(1) make clear that the trial court, prior to accepting a defendant's guilty plea, is not required to inform the defendant of the amount of restitution it may order, assuming the amount is unascertainable as of that date:

"Because this new legislation contemplates that the amount of the restitution to be ordered will be ascertained later in the sentencing process, this amendment ... merely requires that the defendant be told of the court's power to order restitution. The exact amount or upper limit cannot and need not be stated at the time of the plea."

Fed.R.Crim.P. 11 Notes of the Advisory Committee on the 1985 Amendment.

■ We need not address the defendant's contention that the district court erroneously calculated the amount of restitution, because we agree with the defendant's argument that the district court failed to consider his ability to pay in ordering restitution in the amount $84,225.06.

"Despite the fundamental need for appellate deference to trial court sentencing decisions, sentencing statutes such as the VWPA [Victim and Witness Protection Act] impose important substantive and procedural limitations on the trial judge's discretion." *United States v. Mahoney,* 859 F.2d 47, 49 (7th Cir.1988). The Victim and Witness Protection Act "implicitly requires the district judge to balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive, and restrictive goals of criminal sentencing." *Id. (quoting United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987)). The imposition of restitution under the Victim and Witness Protection Act requires that the court consider "the financial re-

---

**5.** This amount includes $62,624.04 of the original $65,000.00 loan made to the defendant (the bank was able to recover a few thousand dollars through sale of the property owned by the defendant and listed as collateral for the loan), plus interest in the amount $19,101.02 that incurred from the time of the loan until January 4, 1988, and attorneys' fees in the amount of $2,500.

sources of the defendant, [and] the financial needs and earning ability of the defendant...." 18 U.S.C. § 3580(a). Such consideration is mandatory when imposing restitution under the Act. *United States v. Gomer*, 764 F.2d 1221, 1222 (7th Cir.1985).

We have been unable to discover from our review of the record that the district court took into consideration the defendant's ability to make restitution and its impact on his family. The defendant argues that the district court failed to comply with the procedures for imposing restitution under the Victim and Witness Protection Act, and abused its discretion in imposing the stated amount of restitution without taking into consideration the defendant's ability to pay after considering his debts and obligations, as well as those of his family. We agree.

In *United States v. Lovett*, 811 F.2d 979 (7th Cir.1987),[6] this court interpreted the construction of the restitution requirements set forth in 18 U.S.C. § 3651. As we stated in *Lovett*:

"This circuit has required that the amount ordered to be paid in restitution as a condition of probation must be ascertained and delineated with an accurate computation and cannot be in excess of the loss actually caused and established, and must be clearly set out with specific findings and directions in the record and order of restitution."

811 F.2d at 990. It is usually necessary for the district court, on the date of sentencing, to recite on the record the amount to be paid in restitution. *Id.* But where the court is unable to determine the amount to be paid in restitution as of that date, the district judge should recite this fact on the record and advise the defendant to confer with the probation officer. For example, if the court is unable to ascertain the specific amount to be paid in restitution on the date of sentencing, the court should advise the defendant to meet with the probation officer to ascertain the correct amount. The probation officer, after consultation with the respective parties, would then attempt to arrive at the proper amount of restitution and obtain the approval of the defendant. Should the defendant desire to challenge the amount of restitution proffered by the probation officer, he could bring the challenge before the court within the term of probation and have the disputed amount judicially determined.

We emphasize that unless the defendant stipulates to the amount of restitution proffered and his ability to pay that amount, the district judge must conduct a hearing to consider the propriety of the amount of restitution, in addition to determining the defendant's obligations, debts, and ability to pay. As we stated most recently in *Mahoney:*

"The time of sentencing has been determined as being one of the most important parts of the judicial proceeding. Thus, in order that the sentencing phase of the judicial process not be made a sham, *the court is obligated to consider the defendant's financial condition pursuant to § 3580(d) as well as balance and weigh the defendant's financial capabilities and obligations.* This same information must be in the record should the court at a later date be called upon to make a determination regarding a probation revocation for nonpayment of restitution or fine."

859 F.2d at 52 (emphasis added). Therefore, we remand to the district court with directions to conduct a hearing to determine the defendant's ability to pay and order restitution pursuant thereto.

### IV

Accordingly, we affirm in part, vacate in part the defendant's sentence as to the payment of restitution only, and remand for resentencing as set forth herein.

AFFIRMED IN PART; VACATED IN PART; CAUSE REMANDED.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

Although the matter may be close, I do not agree that the failure to admonish the

---

6. For purposes of clarity, we note that *United States v. Lovett,* 811 F.2d 979 (7th Cir.1987), cited above, and *United States v. Lovett,* 844 F.2d 487 (7th Cir.1988), cited throughout our discussion in the previous section, *supra,* are separate decisions of this court involving different defendants and different factual backgrounds.

defendant that restitution could be part of his sentence was harmless error.

Rule 11(c)(1) explicitly requires that the defendant, in appropriate cases, be informed that the maximum sentence includes restitution. The district court admonished the defendant three times on November 2 and twice on January 26 that the maximum sentence that he faced was two years' imprisonment and a five thousand dollar fine. At no time before the guilty plea did the court admonish the defendant with respect to the possibility of restitution as a sentence.

The facts are that on November 2 the defendant originally tendered a *nolo contendere* plea and expressed concern about the impact of the plea on *civil* suits for restitution or damages. This concern about civil suits, if it meant anything, suggests that he may not have known at that time that restitution could be required as part of the criminal sentence.

The reliance of the majority on the events of February 8 as establishing the defendant's knowledge of the possibility of restitution as a sentence is misplaced. All the discussion of restitution on February 8 took place as part of the sentencing *after* the defendant had withdrawn his motion to withdraw his guilty plea. The plea, of course, was originally entered on November 2 and was, in effect, "reaffirmed" in the early discussion of February 8 (all of which took place before any discussion of restitution or of the presentence report). It seems to me that the majority has overlooked the purpose of admonishment under Rule 11(c)(1)—to inform the defendant of the possible consequences *before* he pleads. Instead, the majority has relied on statements made at sentencing, *after* the guilty plea was irrevocable.

The best evidence of the defendant's knowledge *before* the "reaffirmance" of his guilty plea on February 8 involves his receipt of the presentence report in December or January. The report contained a Victim Impact Statement, which indicated that restitution "can be ordered." At sentencing, the defendant acknowledged that he had read the presentence report and an addendum to it which he apparently received on the morning of the sentencing. Based on the presentence report, it may be more likely than not that, sometime before the "reaffirmance" of the guilty plea on February 8, the defendant was aware that he could be ordered to make restitution. All of this, however, involves a number of assumptions and inferences. It is not the functional equivalent of a clear statement by the court of the maximum penalty that could be assessed as a result of the entry of a guilty plea. After all, the guilty plea was entered on November 2, long before most of the events and statements relied on by the majority occurred. It is true that the plea may be said to have been "reaffirmed" on February 8, but, of course, the court did not repeat its admonitions then. Under all the circumstances, I do not believe all the purposes of Rule 11 have been met. This is not putting form over substance as the majority suggests. I am simply trying to avoid the sort of jigsaw puzzle approach which the majority has pursued and which Rule 11, by its detailed specification of the elements of the admonishment, is seeking to avoid.

I therefore respectfully dissent as to this matter.